Melissa B. Popkin, Esq. (MP8468)
McGuire, Popkin & Topas
105 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
(973) 863-7018/(973) 535-3407
Melissa.popkin@fnf.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska Corporation | Civil Action No. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| AFFINITY TITLE AGENCY, INC., a New Jersey Corporation and LOUIS J. MACALUSO, a resident of the State of New Jersey, | *Document Filed Electronically* |
| Defendants. | |

Plaintiff, Commonwealth Land Title Insurance Company, a Nebraska Corporation, having a principal place of business at 6601 Frances St., Omaha, NE 68106, by way of Verified Complaint against the defendants, Affinity Title Agency, Inc. and Louis J. Macaluso, says:

**THE PARTIES**

1. Plaintiff, Commonwealth Land Title Insurance Company ("Plaintiff") is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha, Nebraska.

2. Plaintiff is a title insurance company licensed and authorized to do business in the State of New Jersey. Plaintiff offers various products and services in connection with real estate

transactions, including title insurance. Title insurance is offered, inter alia, through authorized agents that enter into contractual agreements with Plaintiff.

3. Defendant, Affinity Title Agency, Inc. ("Affinity") is, upon information and belief, a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 100 S. Jefferson Road, Suite 1, Whippany, New Jersey 07981-1009.

4. Affinity was, at all times relevant hereto, in the business of offering title services and products and was, until its termination by Plaintiff as more particularly set forth below, an authorized agent of Plaintiff in the State of New Jersey, as well as other states across the country.

5. Upon information and belief, defendant, Louis J. Macaluso ("Macaluso"), is the president and sole owner of Affinity and controls the operations of Affinity. Upon information and belief, Macaluso is a resident of the State of New Jersey.

## JURISDICTION

6. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon diversity jurisdiction.

## ALLEGATIONS COMMON TO ALL COUNTS

A. **The Relationship Between the Parties**

8. On or about November 10, 2003, Affinity and Plaintiff's predecessor-in-interest, entered into a Title Insurance Agency Agreement. A copy of the Title Insurance Agency Agreement is attached hereto as **Exhibit A** and incorporated herein.

9. On or about April 20, 2009, Affinity and Plaintiff entered into a Short Form Issuing Agency Contract thereby amending the Title Insurance Agency Agreement dated November 10, 2003. A copy of the Short Form Issuing Agency Contract is attached hereto as **Exhibit B** and incorporated herein by reference. The Title Insurance Agency Agreement and Short Form Issuing Agency Contract are hereinafter referred to as the "Affinity NJ Agreement."

10. Pursuant to the terms of the Affinity NJ Agreement, Affinity became Plaintiff's authorized agent for purposes of issuing, *inter alia*, title insurance commitments and policies relating to property in the State of New Jersey.

11. In addition, on or about December 22, 2004, Plaintiff's predecessor-in-interest, entered into a National Agency Underwriting Agreement, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference, with Affinity (hereinafter referred to as the "National Underwriting Agreement").

12. As noted on Exhibit A to the National Agency Underwriting Agreement, Affinity had a related entity known as ATA Title Agency, Inc, a Florida Corporation (hereinafter "ATA").

13. Pursuant to the terms of the National Underwriting Agreement, Affinity became an authorized issuing agent for Plaintiff's predecessor-in-interest in the States of Florida, New York and Pennsylvania.

14. Thereafter, on or about June 30, 2005, Affinity and Plaintiff entered into an Amendment to the National Underwriting Agreement, a copy of which is attached hereto as **Exhibit D** and incorporated herein by reference, whereby Affinity d/b/a ATA Affinity of PA was authorized as an issuing agent as to the State of Pennsylvania only for Plaintiff.

15. By Amendment to the National Underwriting Agreement entered into on October

17, 2005, a copy of which is attached hereto as **Exhibit E** and incorporated herein by reference, Affinity became authorized by Plaintiff to, *inter alia*, issue title insurance commitments and title insurance policies in the State of Maryland.

16. Finally, by additional amendments or other agreements, Affinity also became authorized by Plaintiff to issue title commitments and policies in the State of Ohio and State of Rhode Island.

17. Plaintiff eventually terminated Affinity as an Agent in New York and Florida. Thus, until recently, as detailed below, Affinity was an authorized issuing agent of Plaintiff in the States of New Jersey, Maryland, Rhode Island and Ohio, as well as the Commonwealth of Pennsylvania.

18. Upon information and belief, Plaintiff was not the only underwriter for Affinity. Upon information and belief, during the relevant time period, Affinity was an authorized agent of other title companies both in the State of New Jersey and other states/commonwealths in which it conducted business.

**B.  The Problems**

19. As an entity in the title business, Affinity acts as a settlement agent in connection with real estate transactions including mortgage refinances and purchases of real property. As such, lenders forward loan proceeds to Affinity to be held in an escrow/trust account and disbursed in accordance with the lender's instructions and the HUD-1 Settlement Statements.

20. On or about March 29, 2011, defendant, Affinity acted as settlement agent in connection with a certain mortgage refinance transaction (the "Van Arsdale Transaction") between Patricia Van Arsdale ("Van Arsdale") and The Huntington National Bank ("Huntington") concerning property commonly known as 3 White Birch Trail in Stockholm,

4

New Jersey (the "Property").

21. In connection with that transaction, defendant, Affinity, issued a title insurance commitment and closing service letter in favor of Huntington. A copy of the title insurance commitment and closing service letter are attached hereto as **Exhibit F** and made a part hereof.

22. In connection with the Van Arsdale Transaction, Van Arsdale obtained a mortgage loan from Huntington of $204,000.00, which money was deposited in an escrow account of defendant, Affinity. A copy of the mortgage is attached hereto as **Exhibit G** and made a part hereof.

23. According to the HUD-1 settlement statement from the Van Arsdale Transaction, a copy of which is attached hereto as **Exhibit H**, at closing, a portion of the loan proceeds were to be used to satisfy an existing mortgage on the Property held by Wells Fargo Home Mortgage. The HUD-1 Settlement Statement reflects a payoff in the amount of $199,823.60 to Wells Fargo.

24. On or about May 25, 2011, Plaintiff's Hackensack, New Jersey office received a telephone call, followed by a confirming e-mail, from a person identifying herself as a representative of Huntington. The representative informed Plaintiff that Huntington was contacted by Van Arsdale and informed that she had received a notice from Wells Fargo Home Mortgage indicating that her mortgage payments are now delinquent.

25. Plaintiff investigated the matter and learned that Affinity had not used the loan proceeds to satisfy the prior mortgage.

26. Plaintiff made inquiries of Affinity regarding its failure to satisfy the prior mortgage and Macaluso, Affinity's principal and owner, eventually admitted that the prior mortgage had not been satisfied and that Affinity did not have sufficient funds to satisfy that mortgage. Macaluso also admitted that this file was not the only file he closed which has

"issues."

27. Plaintiff immediately sent an internal investigation team to Affinity's principal place of business on June 1, 2011 to review Affinity's books and records as it is permitted to do under the National Underwriting Agreement and the Affinity NJ Agreement.

28. The initial results of the June 1, 2011 review reveals significant and extreme irregularities in Affinity's bank accounts. For example, as of March 31, 2011, one of Affinity's escrow accounts appeared to have a shortage in excess of $5,000,000.00.

29. Upon learning of the negligence and shortfall in the escrow account, by letters dated June 1, 2011, Plaintiff terminated its relationship with Affinity. Copies of the letters terminating the relationship and Agreements between Plaintiff and Affinity are attached hereto as **Exhibit I** and incorporated herein by reference.

30. For this reason, it is imperative for the Court to freeze the accounts to ensure that further funds are not misapplied, misused or misappropriated.

## FIRST COUNT

31. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 28 of this Verified Complaint as if set forth at length herein.

32. In connection with the Van Arsdale Transaction, defendants owed a duty to Huntington and Van Arsdale to safeguard the monies entrusted to them.

33. Defendants committed, inter alia, the following intentional and/or negligent acts and omissions in connection with the Van Arsdale transaction:

(a) Defendants failed to pay off and discharge of record a prior mortgage held by Wells Fargo as noted on Line 104 of the HUD-1 Settlement Statement delivered at the closing. A copy of the HUD-1 Settlement Statement is attached hereto as **Exhibit H** and made a

part hereof.

 (b) Defendants failed to pay 2011 Second Quarter Taxes on the Property in the amount of $1,113.96, as required by the lender and the HUD-1 Settlement Statement;

 (c) Defendants failed to pay the homeowner's insurance premium of $588.25 relating to the Property, as required by the lender and the HUD-1 Settlement Statement; and

 (d) Upon information and belief, defendants retained and/or converted a portion of the escrow account funds from said transaction that should have been disbursed and otherwise utilized in the Van Arsdale Transaction.

 34. As a result of the failure of defendants to comply with the closing instructions of Huntington, the Huntington mortgage is not in first lien position as required.

 35. As a result of the failure of defendants to pay-off the Wells Fargo mortgage, as required by the Huntington closing instructions and the title commitment, Van Arsdale may be compelled to continue to make payments on the Wells Fargo mortgage and is also required to make payments on the Huntington mortgage.

 36. As a result of the failure of defendants to remit the payoff of the Wells Fargo mortgage, Plaintiff has received a claim from Huntington requesting Plaintiff to remit the sums necessary to satisfy said lien.

 37. As a result of defendant's intentional and/or negligent acts and omissions, Plaintiff has and will continue to be damaged.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

 (a) Freezing all bank accounts in Defendants' names or in the name of any entity related to Affinity or owned and operated by Defendant Macaluso;

(b) Compelling defendants to deliver to Plaintiff the originals of all closing documents and title files relating to the Van Arsdale Transaction;

(c) Compelling defendants to deposit all monies presently in their escrow/trust accounts and in any other accounts where loan proceeds have been deposited or transferred in connection with the Van Arsdale Transaction with the Clerk of the Superior Court of New Jersey;

(d) Compelling defendants to provide an accounting of all monies deposited into and/or disbursed from their escrow accounts with respect to the Van Arsdale Transaction, including providing copies of all deposit slips and checks written in connection with the Van Arsdale Transaction; and

(e) For damages, punitive damages, attorney's fees, costs of suit and for such other relief as the Court may deem just and equitable.

## SECOND COUNT

38. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 of the Verified Complaint as if set forth herein at length.

39. In connection with the Van Arsdale Transaction, a title insurance commitment and closing service letter underwritten by Plaintiff were issued to the lender and Affinity acted as settlement agent.

40. Plaintiff has received a claim allegedly based in part on the terms and conditions as set forth in said title insurance commitment and closing service letter.

41. After reaching a claim determination, Plaintiff may become subrogated to all claims and rights Huntington has against defendants.

42. Plaintiff is entitled to protect its potential subrogation rights.

43. Defendants owed a duty to Huntington to assure disbursement of all closing proceeds in accordance with its instructions and to otherwise comply with the instructions of the lender necessary to complete the transaction.

44. Defendants breached the duties they owed to Huntington.

45. Plaintiff has and potentially will continue to be damaged based on claims made and received, which damages were directly caused by defendants.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

(a) Compelling defendants to deliver to Plaintiff the originals of all closing documents and title files relating to the Van Arsdale Transaction;

(b) Compelling defendants to deposit all monies presently in their escrow accounts and in any other accounts where loan proceeds have been deposited or transferred in connection with the Van Arsdale Transaction with the Clerk of the Superior Court of New Jersey;

(c) Compelling defendants to provide an accounting of all monies deposited into and/or disbursed from their attorney trust accounts with respect to the Van Arsdale Transaction, including providing copies of all deposit slips and checks written in connection with the Van Arsdale Transaction; and

(d) For damages, punitive damages, attorneys' fees, costs of suit and for such other relief as the Court may deem just and equitable.

## THIRD COUNT

46. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 of the Verified Complaint as if set forth herein at length.

47. Defendant, Affinity, issued title insurance commitments as an agent for Plaintiff for a series of real estate transactions during the period from approximately November 2003

through present (the "Subject Transactions").

48. In connection with the Subject Transactions, based on a review of Affinity's records being conducted by Plaintiff, it appears that defendants failed to obtain and record discharges of prior mortgages and/or remit title insurance premiums to Plaintiff.

49. Indeed, an investigation presently being conducted reveals that Affinity has engaged in a pattern of failing to properly and timely disburse funds in accordance with lenders' closing instructions and HUD-1 Settlement Statements. In addition, it appears that Plaintiff has failed to forward payments to satisfy prior liens on properties.

50. Defendants exhibited a pattern of fraud and/or intentional wrongdoing and/or gross neglect with respect to real estate transactions in which they have acted as settlement agent.

51. As a result of defendants' fraudulent, intentional or grossly negligent acts and omissions, Plaintiff has will continue to be damaged.

WHEREFORE, Plaintiff demands judgment against the defendants as follows:

(a) For damages and punitive damages;

(b) For attorney's fees and costs; and

(c) For such other relief as the Court may deem just and equitable.

## FOURTH COUNT

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 as if set forth at length herein.

53. In connection with some or all of the transactions referenced in paragraphs 8 through 51, it may become necessary for Plaintiff to pay off mortgages and other liens that should have been discharged by defendants, to record instruments that should have been recorded by defendants in order to clear title and to otherwise make whole the insureds and other

parties to whose benefit Plaintiff issued title commitments.

54. Additionally, it has become necessary and/or it will become or continue to be necessary for Plaintiff to initiate legal actions in order to rectify title defects that arose from defendants' intentional and/or negligent acts and omissions and to defend litigation against its insureds arising out of defendants' intentional and/or negligent acts and omissions.

55. Accordingly, Plaintiff shall require and is entitled to pendente lite relief against the defendants in order to preserve and protect its interests and the interests of its insureds.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

(a) Compelling defendants to deliver to plaintiff the originals of all closing documents relating to all transactions referenced in paragraphs 8 through 51 above;

(b) Compelling defendants to deposit all monies presently in their escrow accounts and any other accounts where loan proceeds have been deposited or transferred in connection with the transactions referenced in paragraphs 8 through 51 above, with the Clerk of the Superior Court;

(c) Compelling defendants to provide an accounting of all monies deposited into and/or disbursement from their escrow accounts with respect to the transactions referenced in paragraphs 8 through 51 above and to supply copies of all deposit slips and checks written in connection with said transactions; and

(d) For such other relief as the Court may deem just and equitable.

## FIFTH COUNT

56. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 52 of this Verified Complaint as if set forth at length herein.

57. Pursuant to the Affinity NJ Agreement, Plaintiff, as principal, appointed Affinity

as its agent for the purpose of issuing, on Plaintiff's forms, title insurance commitments, policies and endorsements on real estate located in the State of New Jersey. Affinity is also an authorized issuing agent for Plaintiff in the States of Pennsylvania, Rhode Island, Maryland and Ohio.

58. The Affinity NJ Agreement provided that the agreement could be terminated immediately by the Plaintiff upon the occurrence of certain events, including but not limited to breach of the agreement by Affinity and commission of fraud or misconduct.

59. The Affinity NJ Agreement set forth in detail the terms of the relationship between the parties, including the obligations of Affinity as Plaintiff's agent and fiduciary, and the rights of Plaintiff in situations including termination of the agency relationship.

60. The Affinity NJ Agreement specified that Affinity was to keep all funds received by it from any source in connection with transactions in which title insurance policies of the Plaintiff were to be issued in a federally-insured financial institution, in an account separate from Affinity's individual accounts and designated as an "escrow" or "settlement funds" account; that Affinity was to disburse such funds only for purposes for which the same were entrusted; that all such funds constituted trust funds; and that Affinity agreed that all such funds and accounts would be maintained and documented in accordance with all requirements and guidelines established by Plaintiff.

61. The Affinity NJ Agreement specified that Affinity would maintain and carefully preserve, for a period of not less than seven (7) years following termination of said agreement, in a manner and form prescribed or approved by Plaintiff, all records, books, books of accounts, files, documents, correspondence, bank records, title evidence and material of all kinds in any way relating to the activities of Affinity under the Affinity NJ Agreement or to the policies issued by Affinity, and that all such documentation would be made available for inspection and

examination by Plaintiff at any reasonable time.

62. The Affinity NJ Agreement specified that Affinity would comply with all applicable statutes, rules, and regulations relating to the conduct of Affinity's business.

63. The Affinity NJ Agreement specified that Affinity was to keep a separate file for each title insurance order placed with Affinity, which files would contain, at a minimum, copies of the commitment to insure, policy or policies of title insurance and endorsements if issued, and copies of all documents, including but not limited to title reports, searches, surveys, affidavits, underwriter approvals, and the like, which were relied upon by Affinity to issue the commitment and/or policy or policies.

64. The Affinity NJ Agreement specified that Affinity was to keep a policy register, in a form approved by Plaintiff, showing the disposition of all policies and pre-numbered forms provided by Plaintiff to Affinity in connection with business conducted pursuant to the agreement.

65. The Affinity NJ Agreement specified that Affinity was to cooperate fully with Plaintiff in the performance of quality assurance reviews, audits and other examinations of Affinity's activities.

66. The Affinity NJ Agreement specified that Affinity agreed to permit Plaintiff to audit and examine all financial and business records relating to any escrow business conducted by Affinity at any reasonable time or times, due to Plaintiff's legitimate concerns about closing service letter liability and title insurance policy liability created by Affinity's closing services.

67. The Affinity NJ Agreement specified that Plaintiff would have the right to examine all documentation of Affinity related to the business authorized by the Affinity NJ Agreement at any time during business hours.

68. The Affinity NJ Agreement specified that Plaintiff's examination rights, and its rights to seek equitable remedies, would survive the termination of the Affinity NJ Agreement.

69. The Affinity NJ Agreement prohibited Affinity, without the express written consent of Plaintiff, from disposing of a substantial portion of Affinity's assets which would be necessary for Affinity to fulfill its duties, and from destroying any records, books, books of account, files (any type of media), documents, correspondence, bank records, title evidence, and materials of all kinds in any way relating to the activities of Affinity under the agreement or to the policies issued by Affinity, without first offering such documentation to Plaintiff.

70. The Affinity NJ Agreement contained a provision, entitled "Obligations of Agent Following Termination", that specified that in the event of its termination for any reason whatsoever, Affinity was obligated as follows:

    (a) to deliver to Plaintiff all title insurance policies in the possession of Affinity, including all forms;

    (b) to account for and pay to Plaintiff immediately all premiums (including, but not limited to, any premiums which Affinity collected pursuant to policies not yet issued) and all other outstanding indebtedness owed by Affinity to Plaintiff; and

    (c) to advise and cooperate fully as directed by Plaintiff, in the completion of all such undertakings and transactions, including, but not limited to, the processing to completion, at Plaintiff's sole discretion and direction, of any pending orders according to the provisions of the agreement.

71. The provision entitled "Obligations of Agent Following Termination" also specified that termination would not discharge any liability or obligation of the agent that existed prior thereto.

72. The Affinity NJ Agreement specified that Affinity would be liable to Plaintiff for and agreed to indemnify Plaintiff against, any loss, cost or expense, including attorney's fees and

costs of litigation, sustained or incurred by plaintiff and arising from the fraud, negligence or misconduct of Affinity, or any agent, servant or employee of Affinity, whether or not such loss, cost or expense resulted from any policy issued by Affinity.

73. The Affinity NJ Agreement did not change, and all terms and conditions referenced above remained a part of the Affinity NJ Agreement throughout the term of Affinity's agency relationship with Plaintiff.

74. Upon learning of Defendants' activities and wrongful acts, by letters dated June 1, 2011, Plaintiff elected, pursuant to the terms of the Affinity NJ Agreement and National Underwriting Agreement, to terminate the agreements

75. Based upon the conduct of the defendants more particularly described above, plaintiff reasonably believes that defendants have breached their fiduciary obligations to Plaintiff, as said obligations are expressly set forth in the contractual agreements between plaintiff and defendants; N.J.A.C. 11:17(c); and as otherwise required by law.

WHEREFORE, Plaintiff demands all appropriate judgments and orders against the defendants for the following relief:

(a) compelling the defendants to immediately deliver all "Documentation", as that term defined in the Agency Agreements to Plaintiff, and to make all computer records available for immediate inspection and examination by Plaintiff;

(b) directing that defendants permit Plaintiff access to defendants' places of business for the purpose of completing its audits and examinations of the Documentation and all activities of defendants with respect to title insurance commitments, policies, endorsements, and closing service letters issued in the name of plaintiff and the collection of all premiums and other charges related thereto;

(c) directing defendants to cooperate fully with Plaintiff in the effectuation of Plaintiff's audit and examination rights; and

(d) for such other relief as the court shall deem just and equitable.

## SIXTH COUNT

76. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 72 of this Verified Complaint as if set forth at length herein.

77. As more particularly set forth above, defendants were contractually obligated to indemnify Plaintiff against all loss, cost or expense, including attorney's fees and costs of litigation, sustained or incurred by plaintiff and arising from the negligence or misconduct of defendants, or any agent, servant or employee of defendants, whether or not such loss, cost or expense results from any policy issued by Plaintiff.

78. Plaintiff may suffer losses, including the expenditure of attorney's fees and costs of litigation, as a result of the negligence and/or misconduct of defendants as more particularly described above, as well as the costs and expenses to effect the consummation of the transactions in question and the issuance of the insurance policies.

WHEREFORE, Plaintiff demands all appropriate orders and judgment against defendants for the following relief:

(a) ordering defendants to indemnify Plaintiff against all losses, costs and expenses arising from their negligence and/or misconduct;

(b) awarding Plaintiff attorney's fees and costs of litigation incurred by it in the within litigation and any other litigation which arises out of the negligence and/or misconduct of defendants as agents for Plaintiff; and

(c)     for such other relief as the Court shall deem just and equitable.

                              McGUIRE, POPKIN, TOPAS
                              Attorneys for Plaintiff

                              By:   s/ Melissa B. Popkin
                                  Melissa B. Popkin

Dated:   June 2, 2011

## CERTIFICATION PURSUANT TO L.CIV. R. 11.2

I hereby certify that, to the best of my knowledge, this matter is not the subject of any other pending action in any court or arbitration or administrative proceeding.

                                  s/Melissa B. Popkin
                                  MELISSA B. POPKIN

Dated:   June 2, 2011

## VERIFICATION

STATE OF NEW JERSEY    )
                       ) ss:
COUNTY OF BERGEN       )

Leslie Daub, of full age, being duly sworn according to law, upon her oath, deposes and says:

1. I am the New Jersey State Agency Counsel of Plaintiff. I am authorized to make this Verification on its behalf.

2. I have read the foregoing Verified Complaint and all of the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all of the allegations contained in the Verified Complaint are true based on my personal knowledge, the records of Plaintiff or information available through employees and representatives of Plaintiff.

_____
LESLIE DAUB

Sworn and subscribed before
me this 2 day of June, 2011

_____
NOTARY PUBLIC

Marion I. Rolando
Notary Public of New Jersey
My Commission Exp. 2/18/16